UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------
In re:

TOUGHER INDUSTRIES, INC.,                                Case No. 06-12960
                                                         Chapter 11
                              Debtor.
---------------------------------------------------------------------
LEE E. WOODARD, ESQ.,
CHAPTER 11 TRUSTEE,
                              Plaintiff,

         -against-                                       Adversary No. 07-90022

STEVEN SHAW, CAROLE NEUMULLER a/k/a
CAROLE SHAW, AND LISA PAPA a/k/a LISA
PETTOGRASSO,
                              Defendant(s).
---------------------------------------------------------------------
APPEARANCES:

NOLAN & HELLER, LLP                                      Justin A. Heller, Esq.
*Attorneys for Defendant Steven Shaw*
39 North Pearl Street, 3rd Floor
Albany, NY 12207

SHEEHAN, GREENE, CARRAWAY,                               Thomas D. Latin, Esq.
GOLDERMAN & JACQUES, LLP
*Attorneys for Defendant Carole Neumuller*
99 Pine Street, Suite 402
Albany, NY 12207

HARRIS BEACH, PLLC                                       David M. Capriotti, Esq.
*Attorneys for Plaintiff*
One Park Place, 4th Floor
300 South State Street
Syracuse, NY 13202

Hon. Robert E. Littlefield, Jr., United States Bankruptcy Judge

**MEMORANDUM-DECISION AND ORDER**

1

Currently before the court are motions for attorney's fees filed by Steven Shaw ("Shaw") and Carole Neumuller ("Neumuller") pursuant to Rule 6212(e) of New York Civil Practice Law and Rules ("CPLR"), made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7064 and Federal Rule of Civil Procedure 64.  Given the similarities of the facts and legal issues raised in the motions, they are being consolidated for purpose of this decision.

## JURISDICTION

The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a), 157(b)(1), and 1334(b).

## FACTS

The relevant facts are not in dispute.  The debtor, Tougher Industries, Inc. ("Tougher"), filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on November 3, 2006.  Shaw is President and CEO of Tougher.  Lee E. Woodard, Esq., Chapter 11 Trustee ("Plaintiff" or "Trustee"), was appointed by the court on November 22, 2006.

By summons and amended complaint (the "Complaint"), Plaintiff commenced this adversary proceeding against Shaw and Neumuller (collectively, "Defendants") and Lisa Papa ("Papa") on February 8, 2007, pursuant to 11 U.S.C. §§ 542-548 and New York Debtor & Creditor Law §§ 273-276.  (No. 1.)  Plaintiff alleges that Shaw, with the aid of Neumuller and Papa, misappropriated Tougher's assets for Shaw's personal use.  Shaw admitted to being romantically involved with Neumuller for many years.  Papa is an acquaintance of Shaw.

Shaw filed his answer on March 7, 2007.  (No. 8.)  He subsequently filed an amended answer with counterclaim on April 24, 2007.  (No. 39.)  Neumuller filed her answer on March

12, 2007, and Papa filed her answer on March 30, 2007.[1] (Nos. 10 and 21.) The Plaintiff filed an answer to Shaw's counterclaim on May 2, 2007.

On March 16, 2007, the Trustee presented an order to show cause and supporting affidavit for an order of attachment, without notice, of all bank accounts owned by Defendants, a certain boat purchased by Shaw, but titled to Neumuller, and certain real property located in Lake George, New York. (Nos. 12 and 13.) The court signed an *ex parte* order of attachment under CPLR 6211(a) on March 20, 2007, based upon the allegations in the supporting affidavit and the Complaint that Defendants secreted Tougher's assets with the intent to defraud creditors. (No. 14.) The *ex parte* order of attachment directed, among other things, that

> Plaintiff's undertaking be and the same is hereby fixed in the sum of Twenty Thousand and 00/100ths ($20,000.00) Dollars, of which amount the sum of Seventeen Thousand Five Hundred and 00/100ths ($17,500.00) Dollars thereof is conditioned that the plaintiff will pay to the defendant all costs and damages, including reasonable attorney's fees, which may be sustained by reason of the attachment of the defendant's property. . . .

(No. 15.) Plaintiff timely posted the undertaking. The *ex parte* order of attachment was served on Bank of America and HSBC, as well as on the marina where Neumuller stored her boat. The *ex parte* order of attachment was amended on March 22, 2007, to remove any references to attachment of the Lake George property. (No. 15.)

The Trustee conducted a Rule 2004 examination of Shaw on March 21, 2007, to discern how he had used the funds taken from Tougher. Shaw asserted his Fifth Amendment Privilege

---

[1] Papa and the Trustee reached a settlement and compromise of the Trustee's claims against Papa as set forth in the Complaint. The settlement was memorialized in a Stipulation and Order entered on June 27, 2007. (No. 79.)

Against Self Incrimination ("Fifth Amendment Privilege") to the questions asked by the Trustee.

On March 26, 2007, Plaintiff moved for an order confirming the *ex parte* order of attachment pursuant to CPLR 6211(b) ("Motion to Confirm") based largely on his theory that the documentation provided proved Defendants secreted a substantial amount of money from Tougher for the purpose of defrauding creditors. Plaintiff asserted his theory was further confirmed by the negative inference that could be drawn from Shaw's assertion of his Fifth Amendment Privilege at the Rule 2004 examination. Shaw filed opposition to the Motion to Confirm consisting of declarations of a former Tougher employee and Shaw's attorney, and Shaw's affidavit detailing the payments from Tougher to himself and Neumuller. The Motion to Confirm, originally returnable on March 29, was adjourned to April 6, 2007, at Shaw's request. At the conclusion of the hearing on April 6, 2007, the court found that the Plaintiff had not established grounds for an order of attachment and directed that the *ex parte* order of attachment and the amended order of attachment be vacated. An order in conformance with the court's oral ruling was entered on April 6, 2007. (No. 35.)

Shaw filed a motion on May 14, 2007, seeking attorney's fees and costs of $10,649.00 for defending the Motion to Confirm. (No. 45.) Plaintiff opposed Shaw's motion. (No. 62.) Shaw filed a declaration in further support of his motion and sought an additional $752.50 in attorney's fees. (No. 73.) Plaintiff filed further opposition in reply and a memorandum of law. (No. 83 and 85.) Finally, Shaw filed a declaration in further support of his motion and sought an additional $643.50 in attorney's fees. (No. 87.)

On July 3, 2007, Neumuller filed a motion for attorney's fees and costs seeking $4,797.01 for defending the Motion to Confirm. (No. 80.) Plaintiff filed opposition to Neumuller's motion (No. 84), and Neumuller submitted a reply. (No. 89.) The official committee of unsecured creditors filed a letter in support of the Trustee's position with respect to both motions. (No. 68.)

## ARGUMENTS

Shaw and Neumuller claim that pursuant to CPLR 6212(e) and the terms of the *ex parte* order of attachment, Plaintiff is liable for all damages naturally and proximately flowing from the wrongful attachment, including their attorney's fees and costs incurred in defending the Motion to Confirm. Shaw seeks a total of $12,045.00, and Neumuller seeks a total of $4,797.01.

Plaintiff argues that the attorney's fees sought by Shaw and Neumuller are outrageous given the facts surrounding the attachment. Relying on *Kidder, Peabody & Co. Inc. v. IAG Int'l. Acceptance Group*, 28 F.Supp.2d 126 (S.D.N.Y. 1998), Plaintiff claims that if an order of attachment is issued and later vacated because attachment was unwarranted, strict liability should be limited to cases where property is actually attached.

Plaintiff's position is that no property of Shaw and Neumuller was actually attached. More specifically, Plaintiff contends that there was a negative balance in Shaw's HSBC account at the time of the order of attachment and, therefore, none of his property was actually attached. With respect to Neumuller, Plaintiff claims that she successfully withdrew the majority of the funds on deposit in her accounts even after the order of attachment was served upon Bank of America. The Plaintiff maintains because Neumuller retained use of her bank account there was no actual attachment of her property. Neumuller's position is that there was nothing in the order

5

of attachment prohibiting her from accessing her account and, although she withdrew most of her funds, her account was nevertheless attached, which she needed to address. Furthermore, her boat was attached.

Shaw's attorney claims that in responding to the Motion to Confirm, it was necessary that he review and respond to each document and check relied upon by the Plaintiff, interview a former Tougher employee, and prepare detailed affidavits in response to the Motion to Confirm. In addition, he asserts he also needed to perform legal research regarding the Trustee's argument that a negative inference was permissibly drawn from Shaw's exercise of his Fifth Amendment Privilege at the Rule 2004 examination.

Plaintiff contends that damages sustained must be proximately caused by reason of the attachment. Plaintiff argues attorney's fees incurred by Shaw associated with research of the negative inference were not proximately caused by the attachment, but by Shaw himself. Thus, at a minimum, the Plaintiff should not be liable for that portion of Shaw's attorney's fees.

Additionally, Plaintiff argues that if counsel for Shaw contacted him and advised that the balance in Shaw's account was *de minimis* or, in fact, negative, this motion practice could have been avoided. Furthermore, if Shaw had provided any explanation as to his withdrawals of Tougher funds, the Trustee indicated he would have withdrawn the *ex parte* order of attachment. Thus, the Plaintiff asserts that Shaw expended over $10,000.00 in costs and fees defending the Motion to Confirm at his own risk. Shaw responds that the Trustee had all of this information at the time of the hearing on April 6, 2007, but nevertheless did not withdraw the Motion to Confirm.

## DISCUSSION

Based upon the parties' submission, the applicable state and federal laws, and the relevant case law, the court finds an award of attorney's fees for the Defendants appropriate. Pursuant to Federal Rule of Civil Procedure 64, made applicable by Federal Rule of Bankruptcy Procedure 7064, the remedy of attachment is governed by state law. *See Chem. Bank v. Hoseotes*, 13 F.3d 569, 572 (2d Cir. 1994). In New York, the statutory basis for attachment is found in Article 62 of the CPLR. Rule 6212(e) provides,

> The plaintiff shall be liable to the defendant for all costs and damages, including reasonable attorney's fees, which may be sustained by reason of attachment if the defendant recovers judgment, or if it is finally decided that the plaintiff was not entitled to an attachment of the defendant's property. Plaintiff's liability shall not be limited by the amount of the undertaking.

N.Y. C.P.L.R. 6212(e).

"[CPLR] 6212(e) is not worded in the conditional. . . .  Thus, New York law requires an award of fees when an attachment is vacated as unwarranted." *Merck & Co., Inc. v. Tecnoquimicas*, No. 01 Civ. 5345, 2001 WL 963977, at *3 (S.D.N.Y. Aug. 22, 2001) (citation omitted). Under CPLR 6212(e), a plaintiff is strictly liable for all damages caused by a wrongful attachment, including reasonable attorney's fees. *See Roth v. Pritkin*, 787 F.2d 54 (2d Cir. 1986); *see also, Correspondent Serv. Corp. v. J.V.W. Inv. Ltd.,* 205 F.Supp.2d 191, 204 (S.D.N.Y. 2002).

"It is well-settled that statutes providing for the extraordinary remedy of attachment are strictly construed in favor of the party whose property is sought to be attached." *Provisional Protective Comm. v. Williams*, 121 A.D.2d 271, 273 (N.Y. App. Div. 1986) (citing *Siegel v. No. Blvd. & 80th St. Corp.,* 31 A.D.2d 182, 184 (N.Y. App. Div. 1968)). There is no good faith exception the Trustee would have the court read into the statute. Because attachment is a "harsh

7

remedy," orders of attachment must be granted in strict accordance with the authorizing statute. *Concord Reinsurance Co., Ltd., v. Caja Nacional De Ahorro Y Seguro*, No. 93 Civ. 6606 (JSM), 1994 WL 260779, at *1 (S.D.N.Y., June 7, 1994) (citing *Ashland Oil, Inc. V. Gleave*, 540 F.Supp. 81, 83 (W.D.N.Y. 1982)). The *ex parte* order of attachment, in accordance with CPLR 6212(e), provides that a portion of the undertaking was to cover Defendants' costs and damages, including reasonable attorney's fees should it be ultimately decided, as it was in this case, that the Plaintiff was not entitled to the attachment. Defendants' costs and fees, however, must be proximately caused by the attachment. *See id.* Defendants' attorney's fees attributable to the Motion to Confirm were proximately caused by the wrongful attachment. The court, however, agrees with Plaintiff that the research and work performed by Shaw's counsel with respect to the negative inference drawn from Shaw's choice to employ his Fifth Amendment Privilege was not directly attributable to the Motion to Confirm, but rather by Shaw's own actions. Shaw should bear the burden of researching the ramifications of his actions at the Rule 2004 examination, and the Trustee is not liable for this portion of the attorney's fees sought by Shaw.

Plaintiff relies on *Kidder,* where the court found that "[i]f an order of attachment is issued and subsequently vacated because attachment was unwarranted, it is appropriate to limit the reach of that strict liability to cases where property is actually attached." *Kidder,* 28 F.Supp.2d at 146. However, in *Kidder*, an *ex parte* order of attachment was vacated on consent when it was discovered that the bank held no property of the defendant. *Id*.; *See also*, *Salamanca Trust Co. v. McHugh*, 156 A.D.2d 1007 (N.Y. App. Div. 1989) (an order of attachment was never signed and entered, and no property was attached). The cases relied upon by Plaintiff are distinguishable. In this case, the *ex parte* order of attachment was granted and served upon Bank

of America, HSBC, and Neumuller's marina. Both Defendants' bank accounts were actually attached and encumbered, as was Neumuller's boat. Plaintiff argues that given the nature of the bank accounts, the fees were unreasonable. CPLR 6212(e), however, does not provide any guidance for cases where property attached is of little or no value. *See A & M Exports, Ltd. v. Meridien Intern. Bank, Ltd.*, 222 A.D.2d 378, 379-380 (N.Y. App. Div. 1995) . It does mandate compensation of fees to those whose property is wrongfully attached. While the court may decide whether the property is wrongfully attached, it may not consider the nature and value of the property. "[Plaintiff], having elected to avail itself of a state court remedy . . . must accept the state court procedural rules applicable to the remedy [he] has sought." *Vitrix Steamship Co. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir. 1987).

Reasonableness of Fees

The issue remaining before the court is whether the fees sought by Shaw and Neumuller are reasonable. The burden of proving actual fees incurred rests on the applicant. *In re Hudson*, 364 B.R. 875, 877 (Bankr. N.D.N.Y. 2007) (citing *Abernathy v. United States*, 158 B.R. 749 (Bankr. N.D. Ill. 1993)). "In evaluating the reasonableness of attorney's fees, the court is guided by the "lodestar" approach, which requires the court to determine the reasonable hourly rate for services rendered and multiply that by the reasonable number of hours requires to complete the task at hand." *Id.* at 877. Both Shaw and Neumuller submitted detaned time records in support of their fee requests. Although not at issue in this matter, § 330 addressing compensation of trustees, professionals and others, provides guidance to bankruptcy courts in determining fee awards. Thus, the court will review the time records submitted and the fee requests adhering to the criteria articulated in *In re Lawrence Agency Corp., et. al.*, Case No. 97-11302 (Bankr.

9

N.D.N.Y. July 8, 1998), along with the "loadstar" approach.

As an initial matter, the court finds the blended hourly rate of the three attorneys who rendered services to Shaw of $228 reasonable. In addition, the court finds the hourly rate of Neumuller's attorney of $210 to be reasonable. The court has also determined that $2,232.50[2] is attributable to research done in connection with Shaw's exercise of his Fifth Amendment Privilege and should be excluded from the fees sought by Shaw. In reviewing the parties' attorneys' time records, the court is troubled by the frequency in which the attorneys lump together tasks over extended periods of time, as well as the vague descriptions they provide of the particular services rendered.

*Lumping*

The attorneys' practice of "lumping" together tasks prevents the court from fairly evaluating whether individual tasks were expeditiously performed within a reasonable period of time. Several of Shaw's attorney's entries contain numerous tasks spread over several hours. Examples of lumping in the billing entries are:

| Date/Attorney | Description | Hours |
|---|---|---|

---

[2] The court calculated this amount by adding $940.00 (fees for services rendered on 3/27/2007 by "FJB" for "[r]eview memo of law re: confirmation of order of attachment; research negative inference arising from plea to 5th amendment; availability of set [sic] of proof of claim and use of proof of claim as counterclaim in adversary") and $1,292.50 (fees for services rendered on 03/29/2007 by "FJB" for "[c]ontinue research on negative inference drawn from plea to 5th Amendment privilege; draft memo of law"). As the research associated with Shaw's assertion of his Fifth Amendment Privilege was lumped together with other tasks, it is impossible for the court to determine exactly what portion of the time reported was allocated specifically to the research. For this reason, the court is disallowing the total amount billed in connection with each of these entries.

10

| Date/Attorney | Description | Hours |
|---|---|---|
| 03/27/07 JAH | Review motion to confirm attachment order; letter to court re: adjournment request; telephone call with Attorney's Latin and Dreyer re: motion; office conference with client to review response; legal research re: same; begin preparing affidavit in response | 10.20 |
| 03/27/07 FJB | Review memo if law re: confirmation of order of attachment; research negative inference arising from plea to 5th amendment; availability of set [sic] of proof of claim and use of proof of claim as counterclaim in adversary | 4.00 |
| 03/29/07 JAH | Prepare affidavit for Steve Shaw; prepare declaration for JAH; research re: attachment issues; telephone calls with client and Bridget Bradley | 4.90 |
| 03/29/07 FJB | Continue research on negative inference drawn from plea to 5th Amendment privilege; draft memo of law | 5.50 |
| 03/30/07 JAH | Attention to responses to attachment; meet with client re: same | 3.40 |
| 04/06/07 JAH | Prepare for and attend hearing on motion to confirm attachment | 2.00 |
| 05/09/07 MBK | Research motions for costs and attorney's fees under CPLR 6212; begin drafting motion documents; review previous submissions | 2.40 |
| 05/11/07 MBK | Continue researching and drafting motion for attorney's fees - Woodard | 3.30 |
| 06/07/07 MBK | Draft Declaration in further Support of Motion for Attorney's Fees; research case law on reasonableness of fees and proximate cause; discuss with JAH | 3.50 |
| 07/20/07 MBK | Review further opposition to attorney's fees motion; discuss with JAH | 0.40 |

While lumping occurs with less frequency in Neumuller's attorney's entries, it nevertheless exists.  Examples include the following entries:

| Date/Attorney | Description | Hours |
|---|---|---|
| 03/22/07 TDL | Call to C. Neumuller; Calls to Justin Heller | 0.30 |
| 03/22/07 TDL | Meeting with C. Neumuller; Calls to Justin Heller | 0.40 |
| 03/23/07 TDL | Meeting with C. Neumuller; Prepare e-mail to J. Heller | 0.30 |
| 03/26/07 TDL | Review additional papers submitted by Capriotti; Additional research | 0.50 |
| 04/03/07 TDL | Review response papers; Prepare for argument | 1.90 |
| 04/04/07 TDL | File opposition papers; Dictate letter to Judge Littlefield | 0.80 |
| 04/06/07 TDL | Review e-mails from Capriotti and Heller; File order with Bankruptcy court. | 0.30 |

*Vague Descriptions of Work Performed*

In order for the court to determine its reasonableness, a fee application should identify each task performed. The court should be able to determine from the time entries themselves the legal issues involved, the difficulties of the issues, and the resolution of the results obtained. Shaw's attorney's often state "Attention to…" a certain matter, without any specific description as to the task performed. These types of entries make a fair evaluation of the work done and reasonableness and necessity for the work extremely difficult, if not impossible. Examples of vague billing entries are:

| Date/Attorney | Description | Hours |
| --- | --- | --- |
| 03/22/07 JAH | Attention to issues concerning order of attachment | 1.3 |
| 03/26/07 JAH | Attention to incoming motion to confirm attachment | 0.70 |
| 03/30/07 JAH | Attention to responses to attachment; meet with client re: same | 3.40 |
| 04/04/07 JAH | Attention to opposition to motion to confirm attachment order | 6.60 |

A portion of Neumuller's attorney's time entries also contain inadequate and vague descriptions as to the tasks performed. Examples of the vague billing entries are:

| Date/ Attorney | Description | Hours |
| --- | --- | --- |
| 03/26/07 TDL | Revise Memo of Law | 0.5 |
| 03/26/07 TDL | Review additional papers submitted by Capriotti; additional research | 0.5 |
| 03/27/07 TDL | Research for memo | 2.50 |

Based upon the foregoing deficiencies, the court could deny the fee requests in their entirety. The court, however, acknowledges that Shaw and Neumeller are entitled to recover attorney's fees, albeit reasonable fees, attributable to the Motion to Confirm. Rather than deny the fee requests, to address its concerns, the court will reduce the fees sought by Shaw by 40% and the fees sought by Neumuller by 20%.

## CONCLUSION

For the foregoing reasons, the Defendants' motions for attorneys' fees pursuant to CPLR 6212(e) are granted, and the Trustee is directed to pay Shaw attorney's fees of $5,887.50[3] and

---

[3] $12,045.00 - $2,232.50 = $9,812.50 - $3,925.00 ($9,812.50 x 40%) = $5,887.50

Neumeller attorney's fees of $3,837.61.[4]

It is SO ORDERED.

Dated: 4/18/08

>   /s/  Robert E.Littlefield, Jr.
>   Hon. Robert E. Littlefield, Jr.
>   U.S. Bankruptcy Court Judge

---

[4]$4,797.01 - $959.40 ($4,797.01 x 20%) = $3,837.61